IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN MATHIS,
    Plaintiff,

vs.                                           Case No.: 3:14cv469/MCR/EMT

JOHN SCHWARZ and
S.A. SCHWARTZ, M.D.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jonathan Mathis ("Mathis"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  Mathis sues John Schwarz, a correctional officer, and S.A. Schwartz, M.D., claiming that they violated his Eighth Amendment rights by failing provide adequate medical treatment for Mathis' broken finger (*see* ECF No. 18). Presently before the court are motions to dismiss filed by Defendants (ECF Nos. 48, 58).  Defendants seeks dismissal of the complaint on the ground that Mathis failed to exhaust available administrative remedies prior to filing this lawsuit (*see id.*).  Mathis responded in opposition to the motions (ECF No. 62).

I.      BACKGROUND and INTRODUCTION

In the Third Amended Complaint (ECF No. 18), which is the operative pleading, Mathis alleges that on March 23, 2014, he was involved in a physical altercation with another inmate at Santa Rosa Correctional Institution ("SRCI") (*id.* at 6). He alleges he immediately knew that his left ring finger was broken, because he heard a snap, felt excruciating pain, and the finger was bent in an abnormal position and was swelling (*id.*). Mathis alleges he advised Defendant then-Captain Schwarz[1] that he required emergency medical attention, but Captain Schwarz sent Mathis to administrative confinement without receiving a medical evaluation (*id.*). Mathis alleges a nurse (Nurse Douglas) was dispensing medication in the confinement unit at the time, and she spoke to Mathis about his injury (*id.*). Mathis alleges Nurse Douglas immediately informed Captain Schwarz that Mathis required immediate medical attention, and she requested that Mathis be escorted to the medical department for evaluation and treatment (*id.*). Mathis alleges Captain Schwarz denied Nurse Douglas' request, stating, "Who runs this shit around here?" (*id.*). Mathis alleges Nurse Douglas noted his injury on a "diagram sheet" and assured him she would immediately notify a doctor (*id.* at 7).

---

[1] Apparently Schwarz is now a Major (*see* ECF No. 58 at 1–2).

Mathis alleges over the next two weeks, he remained in confinement with no treatment for his broken finger (ECF No. 18 at 7). He alleges he was finally examined by Defendant Dr. Schwartz, who scheduled x-rays (*id.*). Mathis alleges approximately three weeks later, upon receiving the x-rays, he was transferred to the FDOC medical center, where an orthopedic specialist evaluated his condition and scheduled him for surgery (*id.*). Mathis alleges due to the five-week delay in receiving medical treatment, his finger healed improperly and had to be re-broken and pins placed in it (*id.*). He alleges his finger is permanently disfigured, scarred, crooked, "immobile," and non-functioning (*id.* at 8). He alleges he also suffered, and still suffers, extreme anxiety, emotional distress, sleep disorders, and "post-traumatic stress" (*id.*). Mathis alleges he requires additional surgeries, care, aftercare, and physical therapy (*id.*).

Mathis alleges that upon his return to SRCI from the FDOC medical center, he filed administrative grievances regarding Defendants' denial and delay of medical treatment prior to his transfer to the medical center, but his grievances were denied (ECF No. 18 at 7–8; *see also* ECF No. 12 at 10–18).

Mathis contends Defendants' delay in providing treatment for his broken finger violated the Eighth Amendment (ECF No. 18 at 9). As relief, he seeks monetary

damages, a declaratory judgment, and injunctive relief, including "ordering proper and future medical care" (*id.*).

Defendants request dismissal of this action on the ground that Mathis failed to completely exhaust his administrative remedies prior to filing suit, which is a precondition to filing a § 1983 lawsuit, pursuant to 42 U.S.C. § 1997e(a) (ECF Nos. 48, 58). As explained below, the court concludes that Mathis did not completely and properly exhaust his available administrative remedies prior to filing this lawsuit. Therefore, Defendants' motions to dismiss should be granted.

## II.     EXHAUSTION STANDARD

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)). Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the

programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures; and, second, it promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. Woodford v. Ngo, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process. Ngo, 548 U.S. at 95. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting Woodford, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id.

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510

F.3d 1312, 1322–23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Turner, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing Jones, 549 U.S. 199; Dixon v. United States, 548 U.S. 1, 8, 126 S. Ct. 2437, 2443, 165 L. Ed. 2d 299 (2006); Roberts v. Barreras, 484 F.3d 1236,

1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

In Florida, generally, a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See* Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007). If an inmate is filing a medical grievance, which is the case here, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level. *See* Fla. Admin. Code rr. 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019. If the inmate is dissatisfied with the result of the medical formal grievance (for example, if it is denied), the inmate is authorized to appeal to the Central Office. *Id.* at r. 33-103.007(1), 33-103.008(2).

An inmate may bypass the formal grievance step and file a direct grievance with the Central Office if the grievance is an emergency grievance or a grievance concerning reprisal, protective management, admissible reading material, sentence structure (release date calculations), inmate banking, sexual abuse, or a violation of

the Health Insurance Portability and Accountability Act ("HIPPA"). *See* Fla. Admin. Code r. 33-103.007(6)(a). If an inmate is filing a direct grievance, he must state at the beginning of the grievance that the grievance concerns either an emergency or one of the other issues that is properly addressed in a direct grievance. *See id.*, r. 33-103.007(6)(a)1. The inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the informal and formal grievance steps, except in the case of a HIPPA violation or sexual abuse grievance. *See id.*, r. 33-103.007(6)(a)2.

A formal grievance must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from (1) the date of the response to the informal grievance, or (2) the date on which the incident or action being grieved occurred, if the grievance is a direct formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(b). The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, 33-103.011(3)(b). In the event that an inmate feels that the grievance has not been satisfactorily resolved during the formal grievance procedure, the inmate may submit an appeal to the Office of the Secretary ("Central Office"). *See id.*, 33-103.007(1). Grievance appeals to the Central Office must be received within 15 calendar days

from the date of the response to the formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(c). The Central Office must respond to the grievance appeal within 30 calendar days from the date of receipt of the grievance. *See id.*, r. 33-103.011(3)(c). Unless the inmate has agreed in writing to an extension of the time limit for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code r. 33-103.011(4).

The grievance procedure provides for an extension of the time frames imposed upon inmates as follows:

> (2) An extension of the [ ] time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

Fla. Admin. Code r. 33-103.011(2). The deficiencies cited in Rule 33-103.014 include:

> (e) The formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C.

Case No.: 3:14cv469/MCR/EMT

>(f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.
>
>(g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.;
>
>(h) The direct grievance to the Office of the Secretary was not received within 15 calendar days of the date that the incident or action being grieved occurred; or
>
>(i) The grievance appeal was not received within 15 calendar days from the date of the response to the formal grievance.
>. . . .
>(o) The inmate is raising allegations and charges in a grievance appeal that have not been raised below at the previous level.

Fla. Admin. Code r. 33-103.014(1). An inmate who has a grievance returned to him for reasons stated in r. 33-103.014(1)(f), (g), or (o) may re-file utilizing the proper procedure or correct the stated deficiency and re-file if upon receipt of the notification the filing is within allowable time frames. *Id.* r. 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned, and told that in order for him to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in r. 33-103.011, unless instructed otherwise in the grievance

response. *Id.* Instructions to resubmit are not necessary if a grievance is returned for reasons stated in paragraphs (1)(e), (h), or (i). *Id.*

Additionally, all informal and formal grievances must be filed at the institution or facility to which the inmate is "presently assigned," meaning where the inmate is housed at the time he files the grievance. *See* Fla. Admin. Code r. 33-103.015(4). When a grievance concerns an issue that occurred at another location, it is the responsibility of the staff at the inmate's present location to handle the grievance. *See id.* Final resolution of the grievance is the responsibility of the warden at the institution where the inmate is presently assigned, but direct contact with outside staff may be necessary in resolving the grievance. *See id.*

III. ANALYSIS

There is no dispute that the only formal grievance Mathis filed regarding the delay in medical treatment for his finger was Log No. 1406-119-359 (*see* ECF No. 58, at 3, ¶ 8; ECF No. 62 at 2). Mathis attached a copy of this formal grievance to a prior pleading, his second amended complaint (*see* ECF No. 12 at 10–13). In the formal grievance, Mathis stated that it was a grievance of a medical nature, which enabled him to bypass the informal grievance step (*id.* at 10). Mathis complained about the delay in medical treatment by Captain Schwarz and Dr. Schwartz (*id.* at 10–11). He

stated that he returned to SRCI from the FDOC medical center on June 19, 2014 (*id.* at 12). Mathis stated that on June 21, 2014, he submitted several informal grievances to the Health Service Administrator (*id.*). Mathis stated that as of June 23, 2014, the date Mathis signed the formal grievance, he had not received a response to any of his informal grievances (*id.*).

There is no dispute that Dr. Schwartz responded to Mathis' formal grievance as follows:

> Your request for administrative remedy or appeal has been received, reviewed and evaluated.
>
> In your request for administrative remedy or appeal you indicate: medical
>
> This grievance is being returned without a response since you did not submit the grievance within 15 days of the date of the incident you grieve. This is per 33-014 DOC Policy.
>
> In light of the above information your formal grievance is returned.

(ECF No. 12 at 13). Dr. Schwartz's response was dated June 27, 2014, and delivered to Mathis on July 3, 2014 (*id.*).

There is no dispute that Mathis filed a grievance with the Central Office on September 2, 2014 (Mathis submitted it to prison officials on August 29, 2014), Log No. 14-6-28438 (ECF No. 47-1, Affidavit of Aanal Patel, Ex. 1; ECF No. 58 at 4;

ECF No. 12 at 14–18). Mathis stated that the grievance was of a medical nature, which enabled him to bypass the informal grievance step, and he essentially repeated his allegations about the delay in medical treatment by Captain Schwarz and Dr. Schwartz in March and April of 2014 (ECF No. 12 at 14–17; ECF No. 47-1, Patel Aff., Ex. 1). Mathis did not state at the beginning of the grievance that the grievance concerned either an emergency or one of the other issues properly addressed in a direct grievance to the Central Office, nor did Mathis assert facts suggesting that an emergency existed. Additionally, Mathis did not file the grievance within 15 days from the date of the response to his formal grievance, which is required when filing a grievance appeal with the Central Office.

There is no dispute that the Central Office responded to grievance Log No. 14-6-28438 on September 4, 2014, stating:

> This grievance is not accepted as a grievance of an emergency nature by Health Services, Central Office, Tallahassee.
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your appeal at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.
>
> Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left

Case No.: 3:14cv469/MCR/EMT

>corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.
>
>Based on the foregoing information, your grievance is returned without action.

(ECF No. 12 at 14–17; ECF No. 47-1, Patel Aff., Ex. 1). There is no dispute that the date stamped in the upper corner of the Central Office's response is September 5, 2014. There is also no dispute that Mathis did not re-submit his grievance.

Mathis filed the instant civil rights action on September 4, 2014, the day before the Central Office mailed its response to Mathis (*see* ECF No. 1 at 1).

Defendants contend Mathis failed to completely exhaust prior to commencing this lawsuit, because both his formal grievance and his grievance to the Central Office were returned without action due to Mathis' non-compliance with the grievance procedure (*see* ECF No. 58 at 6). Further, Mathis did not attempt to correct the procedural default, and instead commenced this civil rights case even before he received the Central Office's response (*id.*).

The undersigned agrees. Mathis' formal grievance was not filed in accordance with applicable procedural rules governing the FDOC's grievance process. Mathis filed his formal grievance on June 23, 2014, which was not within 15 calendar days from Captain Schwarz's refusal to allow Mathis to be taken to the medical department

for treatment on March 23, 2014, or within 15 days from Dr. Schwartz's alleged 5-week delay in effecting Mathis' transfer to the FDOC medical center (five weeks from March 23 is the first of May 2014). Additionally, Mathis' transfer to the FDOC medical center does not render the grievance procedure unavailable, since the grievance procedure permits (even requires) inmates to file grievances at their present institution concerning events that occurred at other institutions. Further, Mathis did not allege any facts in his formal grievance that suggested it was not feasible to file the grievance within the relevant time period, and that he had made a good faith effort to file in a timely manner. Therefore, the formal grievance was properly returned to Mathis for failure to comply with the applicable procedural rules governing the FDOC's grievance process, specifically, Fla. Admin. Code rr. 33-103.014(1)(e).

      The same is true of Mathis' grievance to the Central Office. Mathis does not dispute that he failed to attach the formal grievance and response to his Central Office grievance, as required by Fla. Admin. Code rr. 33-103.014(1)(g). Further, Mathis did not label his grievance an emergency or assert facts suggesting that a serious and potentially dangerous situation or crisis existed. Moreover, when the Central Office provided Mathis the opportunity to cure the procedural defect, Mathis did not take

advantage of it, and instead commenced this civil rights action even before he received the Central Office's response to his grievance appeal.

Mathis argues that his informal grievances and formal grievance were sufficient to alert the FDOC to its mistake in delaying medical treatment for his finger, and that the administrative grievance process is simply "red tape" and "game playing" (*see* ECF No. 62). However, the fact remains that Mathis did not properly complete the administrative grievance process prior to filing this lawsuit, and his doing so is required by federal law.

IV. CONCLUSION

Defendants carried their burden of establishing that Mathis failed to completely and properly exhaust his available administrative remedies prior to commencing this § 1983 lawsuit. Therefore, Defendants' motions to dismiss should be granted, and this action dismissed without prejudice.

Based upon the foregoing, it is respectfully **RECOMMENDED**:

1. That Defendants' motions to dismiss (ECF Nos. 48, 58) be **GRANTED**.

2. That this action be **DISMISSED without prejudice**.

3. That the clerk of court be directed to enter judgment accordingly and close the file.

Case No.: 3:14cv469/MCR/EMT

At Pensacola, Florida, this 2<u>nd</u> day of September 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.**  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**